**Debra Ann Kradzinski CELANO**

v.

**Joseph Anthony CELANO and Robert M. John.**

**Civ. A. No. 81–312.**

United States District Court, E. D. Pennsylvania.

April 13, 1982.

Lawrence H. Rudnick, Montgomery County Legal Aid, Philadelphia, Pa., for plaintiff.

Harry R. Nixon, Schneider, Nixon & John, Hatboro, Pa., for defendant John.

Michael H. Kaliner, Legal Aid of Chester County, Inc., Coatesville, Pa., for defendant Celano.

## MEMORANDUM

GILES, District Judge.

Plaintiff, Debra Ann Kradzinski Celano, has filed suit against her former husband, Joseph A. Celano and his attorney, Robert M. John, Esquire, under 42 U.S.C.A. § 1983,[1] alleging, *inter alia*, that Celano and

---

1. 42 U.S.C.A. § 1983 (West, 1981) provides, in pertinent part:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

John, the attorney representing her husband in the couple's custody and visitation rights dispute, were responsible for a series of misrepresentations made to the presiding state court judge, as a result of which she was wrongfully incarcerated. John has filed a motion to dismiss pursuant to Fed.R. Civ.Pro. 12(b)(6), contending that the Amended Complaint fails to state a cause of action against him and that this court lacks subject-matter jurisdiction because plaintiff's incarceration was not effected under color of state law as required by section 1983. Since materials outside the pleadings have been submitted by both parties, I must treat defendant's motion to dismiss as one for summary judgment. Fed.R.Civ.Pro. 12(b). For the reasons stated below, the motion will be granted.

Fed.R.Civ.Pro. 56(c) provides that summary judgment may be granted whenever judgment is appropriate as a matter of law and there exists no genuine issue of material fact. In moving for summary judgment, defendant John has the burden of showing the absence of a genuine issue as to a material fact, and for this purpose the documents considered outside the pleadings must be considered in the light most favorable to plaintiff, as the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party sustains its burden, however, plaintiff must come forward with opposing evidentiary matter showing the existence of a disputed issue of material fact. *Id.* The undisputed facts can be gleaned from the attachments to plaintiff's Amended Complaint and the transcript of the hearing held before Judge Moss on June 3, 1980, to which both parties refer.

Plaintiff and her husband, Joseph Anthony Celano, (hereinafter "Mr. Celano") separated in November, 1978. Plaintiff retained custody of the couple's two children, subject to her husband's visitation rights. Early in 1979, Mr. Celano filed a petition

for visitation with the Court of Common Pleas of Montgomery County, Pennsylvania. A hearing was held before the late Honorable Milton O. Moss on April 11, 1979 at which the parties agreed upon a temporary visitation schedule. Mr. Celano was represented at the hearing by the defendant attorney, Robert M. John, Esquire, (hereinafter "John").

On August 13, 1979, Judge Moss received a letter from Mr. Celano which stated that plaintiff was not complying with the agreed visitation order. In response to this letter, a second hearing was scheduled on September 18, 1979, attended by plaintiff, Mr. Celano, and John, at which the visitation order was again modified. On October 20, 1979, Mr. Celano wrote to Judge Moss stating that he had been denied visitation rights under the modified order. Judge Moss responded to this letter on October 25, 1979 by referring Mr. Celano to his attorney. Mr. Celano had a brief verbal contact with Judge Moss in December, 1979, when as a parking attendant, Mr. Celano approached the Judge about plaintiff's denial of his visitation rights as the Judge was leaving a dinner party. Judge Moss told him he could not discuss the matter and referred him to his attorney. Mr. Celano sent a third letter to the Judge on January 14, 1980 complaining of violations of the court order.

As a result of that letter, John contacted the Judge and requested a hearing to determine whether plaintiff was in fact obstructing Mr. Celano's visitation rights. The court sent a copy of the order scheduling the hearing on January 24, 1980 to plaintiff at 20 Harcourt Lane, Horsham, Pennsylvania. It was returned to Judge Moss, "addressee unknown." Plaintiff did not appear at the hearing. Allegedly she never received notice of the hearing because the order was "misaddressed" to plaintiff at 20 Harcourt Lane, *Horsham*, Pa. instead of 20 Harcourt Lane, *Hatboro*, Pa. While plaintiff's complaint asserts that Mr. Celano and John intentionally supplied the court with

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

the wrong address, there is no allegation that Judge Moss knew it to be erroneous.

Various statements were made by John at the January 24th hearing that plaintiff was, in fact, present at the Horsham address and was deliberately concealing herself within to avoid service of notice and to prevent Mr. Celano from exercising his visitation rights. Judge Moss' response to the situation was to direct that a show cause order issue and that a contempt hearing be held three days after personal service. On March 17, 1980, pursuant to a contempt petition filed by John on behalf of Mr. Celano, Judge Moss signed an order directing plaintiff to show cause why she should not be held in contempt. John's Petition again listed plaintiff's address as 20 Harcourt Lane, Horsham, Pennsylvania. Plaintiff claims that she never was served because of this improper address.

On April 8, 1980, Mr. Celano left a message with the Judge's secretary that the police had been told he was not allowed to see his children. Mr. Celano inquired of the secretary whether a bench warrant could be issued. Mr. Celano had no contact with Judge Moss during the April 8 visit. Prior thereto, Judge Moss had been called by Captain Outland of the Horsham Police Department regarding problems of enforcing the Judge's visitation order. Judge Moss told Captain Outland that the matter was being litigated and he was attempting to see if plaintiff would respond to service of the rule to show cause.

Over a month later, on May 19, 1980, based on a sworn petition filed by John on or about the same date, Judge Moss issued a bench warrant for plaintiff's arrest. The petition represented plaintiff's presence at the Horsham address. It contained representations regarding plaintiff's conduct, attitude, and availability, plaintiff's repeated refusals to provide visitation in violation of the court order, counsel's inability to effect service of the petition for contempt upon plaintiff, and plaintiff's past conduct in attempting to avoid service of process. In addition, affidavits of two Horsham Township police officers were attached, stating that the officers had been called by Mr. Celano to 20 Harcourt Lane, *Horsham*, Pennsylvania, on occasions when plaintiff had refused to grant Mr. Celano visitation rights and that she continued to defy the court order in their presence, even though she was told by them that failure to comply could result in her arrest. One officer's affidavit asserted that in February, 1980, when told of the court order, plaintiff stated to him "that she would never give her babies to the father." Affidavit of Richard Carey. The same police officer told Mr. Celano that he would have to see his lawyer or Judge Moss to try to get an arrest warrant for his wife. At this point, plaintiff was not represented by any counsel of record and had not been in contact with the court, either personally or through counsel, since her appearance at the September 18, 1979 hearing.

Judge Moss, subsequent to issuance of the bench warrant, received letters from John and from Alfred O. Breinig, Jr., Esquire, who represented himself as plaintiff's counsel, indicating that a tentative visitation agreement had been reached. John wrote that he would not oppose either lifting or holding in abeyance of the bench warrant, if, among other things, Breinig would enter his appearance, accept service of the rule to show cause and appear at a hearing on the contempt petition to be scheduled by agreement of counsel. As of that date, Breinig did not promptly enter his appearance or accept service. Judge Moss stated on the record that the bench warrant continued in effect because Breinig had not entered his appearance and because he felt he could not rely upon the letter representations in view of plaintiff's past actions in defiance of a valid existing order. Plaintiff was taken into custody on June 2, 1980, and remained in custody until the following day. As of that time, Mr. Breinig still had not entered his appearance. On June 3, 1980, plaintiff was granted a hearing at which time Judge Moss set forth on the record the events which led up to plaintiff's arrest. He again modified the visitation order. Mr. Breinig entered his appearance for plaintiff at the hearing.

Claiming that the conduct of Mr. Celano and John caused her to be incarcerated in violation of her Fourteenth Amendment liberty interest, plaintiff seeks compensatory and punitive damages as well as costs and attorney fees. Plaintiff also claims that defendants are guilty of false imprisonment under Pennsylvania law.

In *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court described the plaintiff's responsibility in a section 1983 action brought against a private party:

> The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulations, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

*Id.* at 150, 90 S.Ct. at 1604 (footnote omitted).

Since plaintiff has clearly alleged the deprivation of a constitutional right, it remains for her to allege facts indicating that the moving defendant, John, acted under color of state law in causing her incarceration.

■ It is well established that a lawyer representing a client does not act under color of state law for purposes of § 1983 by virtue of being an officer of the court. *Polk County v. Dodson*, —— U.S. ——, ——, 102 S.Ct. 445, 446, 70 L.Ed.2d 509 (1981); *Black v. Bayer*, 672 F.2d 309, 317 (3d Cir. 1982); *Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir. 1980) (per curiam); *Arment v. Commonwealth National Bank,*

505 F.Supp. 911, 913 (E.D.Pa.1981). Thus, John cannot be held liable under section 1983 for unilateral action which he took on behalf of his client as his private attorney.

■ The requirement of action under color of law is satisfied, however, when a private person willfully participates in joint action with a state official. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Black v. Bayer*, 372 F.2d at 320. This is true even when the state official is immune from civil liability.

In *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), the Supreme Court determined held that a private citizen who conspires with a state court judge to deprive a citizen of his constitutional rights may be held liable under section 1983 notwithstanding the judge's absolute immunity from suit. The court cautioned that "merely resorting to the courts and being on the winning side of a law suit does not make a party a co-conspirator or a joint actor with the judge," but held that since the defendants had specifically alleged the successful bribery of the judge, the private parties were acting under color of state law and the complaint against them could not be dismissed. *Id.* at 28, 101 S.Ct. at 186.

■ Thus, in order to proceed to trial, a plaintiff must allege that there existed between the private defendant and the state official an understanding, agreement, or conspiracy to deprive the plaintiff of a federal right.[2]

In *Lugar v. Edmondson Oil Co.*, 639 F.2d 1058 (4th Cir.), *cert. granted*, 452 U.S. 937, 101 S.Ct. 3078, 69 L.Ed.2d 951 (1981), the court stated that the concert of action between private actor and state official required to support a finding of section 1983 liability "implies such a usurpation or cor-

2. The importance of such an allegation was recognized in *Arment v. Commonwealth Nat'l Bank*, 505 F.supp. 911 (E.D.Pa.1981), in which plaintiff alleged that the defendant bank and its attorney had induced a district justice and a law enforcement official to institute groundless criminal proceedings against him. In denying defendant's motion to dismiss, the court emphasized that while not specifically alleging conspiracy between the district justice and defendants, the complaint repeatedly referred to the agreement between them to effect plaintiff's illegal incarceration. *Id.* at 914–15. In this case, plaintiff's complaint does not allege an agreement between Judge Moss and defendants.

ruption of official power by the [private party] or surrender of power by the [state official] that the independence of the enforcing official has been compromised to a significant degree and the official powers have become in practical effect shared by the two." *Id.* at 1069. The degree of participation required on the part of a state court judge was also commented upon by Judge Fairchild in *Sparkman v. McFarlin*, 601 F.2d 261 (7th Cir. 1979) (per curiam). Noting the strong policy against lower court review of state court proceedings, he stated:

> I would build into any principle for the recognition of a § 1983 claim based on a private person's conspiracy with a state judge, a requirement of pleading and proof not only that the private party used the state court proceedings to produce a constitutional wrong, but that there was agreement between the party and judge beyond ordinary request and persuasion by the prevailing party, and that the state court judge invidiously used his office to deprive the § 1983 plaintiff of a federally protected right.

*Id.* at 262 (Fairchild, J., concurring) (citation omitted).

■ Since in most instances a judge will "agree" with one party and disagree with another in rendering a decision, it is evident that more than this simple form of "agreement" is required to allege joint activity between an attorney, as private party, and a judge, as state official. Otherwise, counsel could state a cause of action under section 1983 whenever a judge was persuaded by the prevailing party to render a decision adverse to the losing party.

■ Plaintiff's responsibility to prove ultimately that Judge Moss and John conspired or willfully participated in joint activity to have her wrongfully incarcerated requires plaintiff to allege and establish facts indicating the existence of an agreement, express or tacit, between them. Defendant's motion has established to this court's satisfaction that there is no evidence from which a reasonable person could conclude that such an agreement existed between Judge Moss and defendants.

■ At most, the amended complaint charges defendants Celano and John with conspiracy to mislead Judge Moss as to plaintiff's conduct and location. Absent from plaintiff's complaint is any allegation that Judge Moss willfully combined with defendants or invidiously used his official powers to have plaintiff wrongfully arrested and imprisoned. The absence of such an allegation provides a basis for dismissal of the complaint. *See, e.g., Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206–07 (7th Cir. 1980). In addition, defendant John has produced uncontradicted evidence in the form of a transcript of the June 3, 1980, hearing which eliminates any dispute as to whether such an agreement could have existed. Even viewed in the light most favorable to plaintiff, I find that there is no evidence whatsoever of a conspiracy between Judge Moss and defendant John to deprive plaintiff of her constitutional rights.

Plaintiff's complaint may be read to specify four sources of an inference of misconduct on the part of Judge Moss, but an examination of the pleadings and undisputed facts reveals that none is sufficient to withstand defendant John's motion. Plaintiff alleges that the defendants contacted Judge Moss on an *ex parte* basis on several occasions for the purpose of destroying his impartiality; that Judge Moss issued an order at defendants' behest calling upon plaintiff to show cause why she should not be held in contempt of court; that Judge Moss later issued a bench warrant for plaintiff's arrest in violation of Pennsylvania procedure; and that Judge Moss failed to lift the warrant after John and plaintiff's counsel indicated to him that they would not contest its revocation.

The series of *ex parte* contacts initiated by Mr. Celano with the alleged approval of John was candidly reviewed by Judge Moss at a hearing held on June 3, 1980, the day following plaintiff's incarceration. The transcript of that hearing reveals, and it is undisputed, that when Mr. Celano wrote to Judge Moss on October 20th, the Judge

wrote him a response which told him to seek his attorney's advice. Similarly, in response to Mr. Celano's *ex parte* contact on December 8th, the Judge did not discuss the matter with him and again told him to seek his attorney's advice. Judge Moss took no other action on the basis of Mr. Celano's *ex parte* contacts except to schedule the September 18, 1979 hearing, which was attended by plaintiff, and to schedule the January 24, 1980 hearing. There is no suggestion on this record that Judge Moss engaged in any surreptitious activity based upon these *ex parte* contacts or in any way encouraged them. In fact, at the hearing of April 11, 1979, Judge Moss specifically instructed John and plaintiff's previous counsel, Ford, that the attorneys were to return to him in the event of any difficulties.

Any remarks by John were made in open court or were contained in a letter which was also sent to plaintiff's attorney. There is no indication whatsoever that the defendants succeeded in compromising Judge Moss' impartiality so that he became a willful participant in a joint effort to deprive plaintiff of her constitutional rights.

Although plaintiff alleges that Judge Moss' issuance of the show cause order upon petition of Mr. Celano violated Pennsylvania procedure for an adjudication of civil contempt, the undisputed facts established that Judge Moss acted in accordance with Pennsylvania procedure, as set forth by the Pennsylvania Supreme Court in *Commonwealth ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 6, 253 A.2d 263, 266 (1969). This case establishes that the first step in a civil contempt adjudication is issuance of a rule to show cause why attachment should not issue. This is the procedure Judge Moss followed when he granted the rule to show cause on March 17, 1980, pursuant to Mr. Celano's Petition for Contempt.

Plaintiff has alleged that the petition was not docketed in the Montgomery County Court of Common Pleas and does not appear in the official file, however, there is no evidence or allegation that this is in any way attributable to joint activity between Judge Moss and defendants. Similarly, plaintiff's allegation that the various documents sent to plaintiff at the Horsham address were misaddressed cannot be attributed to joint activity between Judge Moss and defendants. Even viewed in a light most favorable to plaintiff, the most the undisputed facts suggest is that Mr. Celano and John supplied the court with the wrong address, either negligently or intentionally.

As to the order scheduling a hearing in January, 1980, which was sent to plaintiff at the Horsham address, there are no facts to suggest that there was any court record of an address for plaintiff in Hatboro rather than Horsham or that Judge Moss knew or believed plaintiff's mailing address to be other than 20 Harcourt Lane, Horsham, Pa. In any event, there are no facts from which it can be inferred that Judge Moss engaged in joint activity with defendants to send notice of the hearing to the wrong address in order to incarcerate plaintiff unlawfully. In fact, the evidence is to the contrary. When Judge Moss received the returned document with the indication "addressee unknown" his response was not to incarcerate plaintiff but was, simply to instruct John to serve plaintiff with a rule to show cause setting up a hearing within three days after service.

Two months passed. John then filed a petition for a bench warrant with Judge Moss representing that he had been unable to make service of the show cause order upon plaintiff. Attached to the petition were affidavits of the Horsham police stating that they had visited plaintiff's residence at 20 Harcourt Lane, Horsham, Pa. on complaints by Mr. Celano but that she had refused to comply with the court's visitation order. At the June 3, 1980 hearing, Judge Moss stated that based upon the affidavits of the Horsham police, and the representations in the petition, it was his belief that plaintiff was present at the Horsham address. Plaintiff has produced no evidence from which it can be inferred that when the bench warrant issued Judge Moss knew plaintiff's address to be other than the Horsham address. Very simply, there is no evidence of joint activity on the part of

Judge Moss and the defendants to deny plaintiff a fair hearing by misaddressing documents designed to bring her before the court involuntarily.

Based upon the petition for bench warrant, representations made therein, and attached affidavits, Judge Moss issued a bench warrant for plaintiff's apprehension so that a show cause hearing could be held. Plaintiff has not specified in what way, if any, Judge Moss varied from normal Pennsylvania practice in doing so. The police affidavits attached to the petition for bench warrant stated that plaintiff was knowingly defying the visitation order at the Horsham address and demonstrated she was to be found there despite the January mail notation of "addressee unknown" for plaintiff at that same address. Plaintiff does not contend that Pennsylvania law prohibits a court from issuing a bench warrant to bring a party before the court for a hearing when it is represented to the court that the party is deliberately frustrating efforts to enforce the court's order and is deliberately avoiding service of notices and petitions designed to bring the party before the court voluntarily, as was represented to the court in ¶ 16 of the defendants' petition for a bench warrant. Cf. Knaus v. Knaus, 387 Pa. 370, 127 A.2d 669 (1956) (dictum "The power to enforce their decrees is necessarily incident to the jurisdiction of courts." Id. at 387 Pa. 376, 127 A.2d 672).

■ Even if some procedural irregularity were present in the issuance of the bench warrant, there is no allegation in the complaint, or evidence of record, that any irregularity was the result of an agreement or combination between the defendants and Judge Moss undertaken to deprive plaintiff of a constitutional right. The mere fact that plaintiff alleges the representations made to the court by John were inaccurate, whether negligently or by design, does not contradict the essential, undisputed fact that Judge Moss acted independently, and not in tandem with the defendants, in his decision to issue the bench warrant.

It is significant that counsel for plaintiff, Mr. Breinig, was informed by John of the issuance of the bench warrant at least as early as May 22, 1980—10 days before plaintiff's arrest, further negating any inference that the Judge acted surreptitiously or conspired with defendants to incarcerate plaintiff without notice and an opportunity to be heard.

Judge Moss explained at the record hearing following plaintiff's incarceration that his refusal to lift the bench warrant despite both attorneys' non-opposition to its being lifted or held in abeyance was due to the failure or refusal of plaintiff's attorney to enter his appearance on plaintiff's behalf, so that he could not rely upon Mr. Breinig's representations as binding upon his client. Plaintiff cannot, and does not, contend that a judge is obligated to accept the representations of an attorney who has not entered his appearance. They are not, certainly, enforceable through any court mechanism. Furthermore, as Judge Moss explained at the hearing of June 3, plaintiff's persistent failure to respond to court process had led him to regard her as a "phantom." The refusal to lift the bench warrant is not alleged to be the result of joint activity between the judge and the defendants. In fact, by letter to the court, defendant John had agreed to a lifting of the bench warrant if Mr. Breinig entered his appearance forthwith and if several other agreed upon conditions were fulfilled, thereby negating any possibility of joint action in the actual execution of the warrant.

■ Simply put, there is no evidence that Judge Moss willfully participated in joint activity with defendants Celano and John to deprive plaintiff of her constitutional rights. At most, the undisputed facts establish that he was misinformed by counsel as to the conduct and availability of plaintiff. As a matter of law, this is insufficient to establish the "joint activity" requirement between Judge Moss and either defendant necessary to establish action under color of state law. Plaintiff has not come forward with any evidence to indicate otherwise. Summary judgment is accordingly granted as to defendant John.

Similarly, on this record, evidence of joint activity between Judge Moss and Mr. Celano is lacking. Defendant Celano did not file a Motion for Summary Judgment. However, upon order of the court, the parties were informed that defendant John's Motion to Dismiss would be treated as one for summary judgment as to defendants John and Celano. All parties were given an additional period of time in which to file whatever material they deemed appropriate in light of the court's order. None of the parties chose to do so within the time period established in my order. Accordingly, I find, on this record, that the requirement of action under state law is also absent as to Mr. Celano and that summary judgment is also appropriate as to him. Since the instant proceedings remain at the pretrial stage, I shall exercise my discretion to dismiss plaintiff's pendent false imprisonment claims against both defendants under Pennsylvania law. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).