**William T. HAMILTON, Plaintiff,**

v.

**Joan E. ARNOLD a/k/a Joan Nigro, Defendant.**

**No. CIV. A. 97–40035–NMG.**

United States District Court, D. Massachusetts.

March 9, 2001.

Edward Greer, Brookline, MA, for Plaintiff.

William T. Hamilton, Worcester, MA, Pro se.

Joseph A. Seckler, Worcester, MA, for Defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The plaintiff has filed a lawsuit under 42 U.S.C. § 1983 in which he seeks redress for a deprivation of property and denial of access to an impartial decision maker in his divorce proceeding against his ex-wife, both in violation of his right to due pro-cess. Pending before this Court are de-fendant's motion for summary judgment (Docket No. 38) and plaintiff's motion for attachment of real estate (Docket No. 91).

## I. *Background*

On February 21, 1997, William T. Hamil-ton ("Hamilton"), acting *pro se,* filed a § 1983 action against Attorney Joan E. Arnold ("Attorney Arnold") for conspiring to deprive him of his right to due process. Hamilton alleges that, while representing his former wife in divorce proceedings, Attorney Arnold conspired with Massachu-setts Probate and Family Court Judge Ar-lene S. Rotman ("Judge Rotman") to deny him access to an impartial decision maker and to deprive him of his property without due process of law.

Attorney Arnold represented Janet Guy–Hamilton, Hamilton's ex-wife, in di-vorce proceedings in the Worcester Divi-sion of the Probate and Family Court De-partment. Judge Rotman presided over those proceedings and entered a Judgment of Divorce Nisi on August 27, 1992. Judge Rotman also presided over various post-trial motions filed by Hamilton.

Throughout the course of the divorce proceedings, Hamilton perceived what he believed to be clear partiality on the part of Judge Rotman toward Attorney Arnold and Hamilton's ex-wife. In his complaint, Hamilton alleges that:

1) Attorney Arnold and Judge Rotman engaged in *ex parte* communications,

2) Judge Rotman repeatedly made evi-dentiary rulings adverse to his case without sufficient information to de-termine admissibility,

3) Judge Rotman winked and made oth-er facial gestures at Attorney Arnold,

4) Judge Rotman's findings of fact dis-torted or ignored the few strong points in his favor,

5) Attorney Arnold has "never had an unfavorable result before [Judge Rotman]",

6) Attorney Arnold and Judge Rotman were and are close personal friends, and

7) as a result of a complaint arising from concerns about her relationship with Attorney Arnold, the Massachusetts Commission on Judicial Conduct commenced an investigation of Judge Rotman.

After initially proceeding *pro se* in this case, Hamilton retained Attorney Edward Greer as his counsel in 1998. After several assented-to continuances of discovery deadlines, the amended Scheduling Order of this Court directed that discovery would be completed on or before February 22, 1999.

Pursuant to persistent requests of the plaintiff, this Court allowed him to conduct additional discovery. Thereafter, Judge Rotman was deposed and Attorney Arnold produced a list of cases in which both she and Judge Rotman were involved in some capacity from the time Judge Rotman was appointed to the bench until the filing of the instant lawsuit.

Still unsatisfied, Hamilton filed another motion for further discovery, seeking access to Attorney Arnold's appointment calendars and additional depositions. On August 18, 2000, this Court held a hearing on the pending motions for summary judgment as well as Hamilton's further discovery requests. By order entered September 20, 2000, this Court allowed, in part, the motion for further discovery and ordered Attorney Arnold to produce her appointment calendars for the period between Judge Rotman's appointment to the bench and the filing of this lawsuit. A ruling on the pending motion for summary judgment was postponed.

## II. *Motion for Summary Judgment*

### A. Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only where the party opposing summary judgment provides evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990).

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists, summary judgment is appropriate.

The test for summary judgment is based in reality. *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.

1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). "Brash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment." *Dow v. United Bhd. of Carpenters,* 1 F.3d 56, 58 (1st Cir.1993). Summary judgment may be appropriate "[e]ven in cases where elusive concepts such as motive or intent are at issue . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz,* 896 F.2d at 8.

### B. The Section 1983 Claim

Section 1983 provides a federal cause of action to redress violations of the Constitution or other federal laws, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

■■■■ A § 1983 claim does not lie absent state action. *Alexis v. McDonald's Restaurants of Massachusetts, Inc.,* 67 F.3d 341, 351 (1st Cir.1995). Although generally not amenable to suit under § 1983, private actors act "under color of law" if they are willful participants in a joint activity with the state or its agents. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Roche v. John Hancock Mutual Life Ins. Co.,* 81 F.3d 249, 253–54 (1st Cir.1996)("[P]rivate actors may align themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of § 1983."); *Alexis,* 67 F.3d at 351 ("Where a private individual is a defendant in a section 1983 action, there must be a showing that the private party and the state actor jointly deprived plaintiff of her civil rights.").

·Of particular relevance to the instant case, the United States Supreme Court has held that "[p]rivate parties who corruptly conspire with a judge in connection with such conduct are thus acting under color of state law within the meaning of § 1983 . . . ." *Dennis v. Sparks,* 449 U.S. 24, 29, ·101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Attorney Arnold is a private citizen and the mere fact that she represented the winning side of Hamilton's divorce suit does not make her a joint actor with Judge Rotman. *Id.* at 28, 101 S.Ct. 183. Accordingly, she will be deemed to be a state actor for the purposes of § 1983 only if she conspired with Judge Rotman to deprive Hamilton of his constitutional rights.

■■■■ A civil rights conspiracy is

> a combination of two or more persons acting in concert to ˙commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties "to inflict a wrong or injury upon another," and "an overt act that results in damages."

*Earle v. Benoit,* 850 F.2d 836, 844 (1st Cir.1988). For a conspiracy to be actionable under § 1983, the plaintiff must prove that there has been an agreement and an actual deprivation of a right secured by the Constitution and laws. *Id.* It is not necessary to show an express agreement to prove conspiracy; circumstantial proof may be sufficient. *Dinco v. Dylex Ltd.,*

111 F.3d 964, 970 (1st Cir.1997); *Earle,* 850 F.2d at 845. For example, "if a gang of drug dealers were caught in the middle of a sale, it would be a very small step to infer a prior agreement." *Dinco,* 111 F.3d at 970. But the importance of proving an agreement to conspire is paramount. Indeed, in affirming a directed verdict in favor of the alleged conspirators in a § 1983 case, the First Circuit Court of Appeals pointed out that

> [t]he problem for the plaintiff is not the propriety of the acts they cite, but, rather, whether they show *agreement.* Was there a single plan the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences? At the least, did the parties decide to act "interdependently," each actor deciding to act only because he was aware that the other would act similarly?

*Aubin v. Fudala,* 782 F.2d 280, 286 (1st Cir.1983) (citations omitted). Hamilton must, therefore, establish facts indicating the existence of an agreement, express or tacit, between Judge Rotman and Attorney Arnold to deprive him of a federal right. *Alexis,* 67 F.3d at 352.

This Court recognizes that it "must be cautious in labeling allegations of conspiracy as conclusory, as well as in resolving cases involving conspiracy or state of mind by summary judgment." *Moran v. Bench,* 353 F.2d 193, 195 (1st Cir.1965) (citations omitted). The mere use of the word "conspiracy," however, without supporting facts that tend to show the existence of an unlawful agreement is insufficient to counter affidavits denying such an agreement. *Id.* Because Hamilton offers no evidence, circumstantial or otherwise, of an agreement between Attorney Arnold and Judge Rotman to deprive him of his property and his right to an impartial decision maker defendant's motion for summary judgment will be allowed. *See Celano v. Celano,* 537 F.Supp. 690, 694–98 (E.D.Pa.1982) (granting summary judgment for defendants in a § 1983 action where plaintiff failed to prove existence of an agreement between judge and defendants to deprive her of a federal right).

Hamilton has submitted numerous affidavits and depositions of witnesses who have stated, *inter alia,* that Attorney Arnold 1) often was in Judge Rotman's chambers (sometimes by herself), 2) used the Judge's phone in chambers, 3) entered the Judge's courtroom with the Judge from a restricted area near her chambers (the so-called "parade into the courtroom"), 4) nodded and winked at the Judge during testimony in several cases (the Judge nodding in return), 5) had lunch with the Judge on numerous occasions, and 6) was often seen with the Judge on their way to social occasions. In addition, some witnesses have testified that Attorney Arnold had an unusually favorable record in cases where she appeared before Judge Rotman and that Judge Rotman drew a disproportionately large number of cases in which Attorney Arnold represented one of the parties. A fellow probate judge even admitted that he would not want to have his wife represented by Attorney Arnold in a case before Judge Rotman based upon the reputation they have as close friends. *See* Deposition of Judge Ronald W. King, at 43–44.

Viewing that evidence in the light most favorable to Hamilton, it is apparent that Judge Rotman and Attorney Arnold were close personal friends who frequently socialized with one another. Moreover, it is quite clear to this Court that they improperly flaunted their friendship and may have engaged in other inappropriate conduct during Hamilton's divorce proceedings. Regardless of whether such conduct

was improper, it gave the appearance to outsiders of a potential conflict of interest.

Nevertheless, the obvious friendship and the appearance of impropriety it created does not, without more, constitute circumstantial evidence of an express or implicit agreement to deprive Hamilton of a fair proceeding. *See Wagenmann v. Adams*, 829 F.2d 196, 209–211 (1st Cir.1987)(finding that close relationship between private citizen and deputy police chief raised inference of an agreement between them to falsely imprison plaintiff sufficient to render private citizen a state actor in light of additional evidence that private citizen influenced police investigation).

There is simply no evidence of any *ex parte* communications regarding Hamilton's divorce case, much less of an agreement to deprive him of a fair divorce proceeding. Furthermore, two of Hamilton's key witnesses have stated, via affidavit, that they have no personal knowledge of whether Attorney Arnold and Judge Rotman conspired to deny plaintiff a fair divorce trial. *See* King Depo., at 45; Deposition of Patricia Nykiel, at 17–18. Accordingly, Hamilton has failed, despite a protracted discovery period, to provide evidence of an agreement between Attorney Arnold and Judge Rotman sufficient to warrant viewing Attorney Arnold as a state actor. No reasonable jury could so find and, without state action, Hamilton's § 1983 claim cannot withstand the motion for summary judgment.

### III. *Motion for Real Estate Attachment*

Hamilton requests that this Court enter an attachment of Attorney Arnold's real property located in Massachusetts up to the amount of $500,000. In support thereof, Hamilton claims that the jury may well award substantial damages in this case and that Attorney Arnold has no insurance available to cover a potential judgment against her. He also expresses fear that Attorney Arnold may be planning to move out of Massachusetts and to take her assets with her. Apparently, Attorney Arnold has already sold two rental properties in Massachusetts and is currently marketing her law office space. She has also recently stopped practicing law to write children's historical novels, and thus, Hamilton argues, has no business-related need to remain in Massachusetts.

Pursuant to Fed.R.Civ.P. 64, the remedy of attachment is available "under the circumstances and in the manner provided by the law of the state in which the district court is held." In Massachusetts, the substantive standard and procedure governing attachments are contained in Rule 4.1 of the Massachusetts Rules of Civil Procedure which provides that an order approving attachment

> may be entered only after notice to the defendant and hearing and upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment.

Mass.R.Civ.P. 4.1(c). That rule also requires the movant to submit affidavits setting forth "specific facts sufficient to warrant the required findings" based upon the affiant's own knowledge, information or belief. Mass.R.Civ.P. 4.1(c) & (h). "[T]he central question on the motion for approval of attachment is whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount." *Johnson v. Koplovsky Foods, Inc.*, 5 F.Supp.2d 48, 51 (D.Mass.1998) (*quoting Anderson Foreign Motors, Inc. v. New England Toyota Distributor, Inc.*, 475 F.Supp. 973,

978 (D.Mass.1979)); *see also Tunnicliff v. Motel 6, OLP,* 178 F.R.D. 8, 10 (D.Mass.1998)(denying motion for attachment of real property where plaintiff failed to allege "specific facts showing a reasonable likelihood of recovery in any amount").

■ Although Hamilton cites documents relating to Attorney Arnold's new career and property sales, he has failed to submit affidavits in support of his own in which he states his belief that Attorney Arnold is currently marketing the premises of her law offices. More importantly, as set forth with respect to the pending motion for summary judgment, Hamilton has not otherwise alleged specific facts showing a reasonable likelihood of recovery. Accordingly, his motion for an attachment of real estate will be denied.

### ORDER

For the reasons set forth in the Memorandum above:

1) Defendant's motion for summary judgment (Docket No. 38) is AL-LOWED; and

2) Plaintiff's motion for real estate attachment (Docket No. 91) is DE-NIED.

So ordered.