Margaret A. CHICARELLI, Gregory Chicarelli, a minor, by Margaret A. Chicarelli, his guardian and Isabel Tallon

v.

PLYMOUTH GARDEN APARTMENTS, et al.

Civ. A. No. 80–1331.

United States District Court,
E.D. Pennsylvania.

Nov. 24, 1982.

David N. Brook, Media, Pa., for plaintiffs.

John W. Walter, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This case is before the Court on plaintiffs' motion for summary judgment on the issue of liability only and on defendants' motion to dismiss or, in the alternative, for summary judgment. Defendants are the 34 investors in Plymouth Gardens, an unincorporated association, all of whom reside in states other than Pennsylvania. Plaintiffs Margaret Chicarelli, her son Gregory Chicarelli, and her mother Isabel Tallon, are residents of Pennsylvania and former tenants of Plymouth Garden Apartments, an apartment complex owned by defendants. Plaintiffs claim they were deprived of liberty and property interests secured by the Constitution in violation of 42 U.S.C. §§ 1983 and 1985 as a result of eviction proceedings initiated by the defendants in March, 1980. Plaintiffs also advance state law claims of malicious use of civil process, abuse of process, false arrest and imprisonment, and defamation. Since, in considering defendant's motion to dismiss, or in the alternative for summary judgment, we have considered matters outside the pleadings, this motion has been treated as a motion for summary judgment under Rule 56. Fed.R.Civ.P. 12(c). Plaintiffs' motion has, of course, also been so considered. For the reasons stated below, plaintiffs' motion for summary judgment is denied and summary judgment is granted to defendants on all of plaintiffs' claims. Consequently, the order of this court listing this case for trial and for a pretrial conference is vacated.

On the basis of facts admitted in the pleadings and uncontradicted by affidavits and depositions, the uncontested facts in this action can be summarized as follows:

The lease between plaintiff Margaret Chicarelli and Plymouth Gardens signed by Ms. Chicarelli contained provisions allowing Plymouth Gardens as lessor to confess judgment against Ms. Chicarelli as lessee for possession of the leased premises in the event a condition of the lease was broken during its term. One such express condition was that the lessee and/or the occupants of the leased premises not conduct themselves in an improper or objectionable manner. Ms. Chicarelli also waived any notice requirements other than the five-day period provided for in the lease.

On February 25, 1980, plaintiffs received a notice to vacate their apartment within five days because, according to the notice, numerous vandalism complaints against Gregory Chicarelli had been received by the management of Plymouth Garden Apartments. Plaintiff contacted an attorney the next day, who wrote to the property manager of Plymouth Garden Apartments, Stan

Cowan, requesting specific information concerning these complaints.

On March 11, 1980, Plymouth Gardens, through its attorney Douglas Kissel, filed a complaint for confession of judgment for possession of the premises. The complaint purported to be filed pursuant to Pa.R.C.P. § 2970, which sets out the procedure for actions to enter a judgment in ejectment for possession of real property by confession pursuant to an instrument authorizing such confession. The complaint alleged default in the terms of the lease agreement in that "defendant's children (2 boys) were constantly damaging doors and hinge torn off Clark Bldg. door, and many other vandalism complaints." Judgment purported to be confessed for Ms. Chicarelli by Mr. Kissel.

Judgment was entered in favor of Plymouth Gardens the same day in the Court of Common Pleas of Montgomery County, Pennsylvania, and a writ of possession issued. Notice thereof was mailed by the Prothonotary in an envelope postmarked March 5, 1979, which envelope had been provided the Prothonotary by Mr. Kissel. The complaint, the affidavit of mailing, the praecipe for the writ of possession, and other affidavits filed with the complaint were signed by Mr. Kissel's employees, and the affidavit of mailing carried a notarization dated March 5, 1980, although mailing was actually made on March 11, 1980.

On March 12th a sheriff's deputy served and returned the writ of possession by leaving it on the kitchen table in plaintiffs' apartment. The deputy also changed a lock on the front door of the apartment, but did not lock it. Another lock, within the knob of the front door, was not changed. Plaintiffs had access to the apartment and a means to lock it. On March 13, a Plymouth Township police officer, along with several employees of Plymouth Gardens, visited the apartment while plaintiff Isabel Tallon was at home and the police officer inquired as to why plaintiffs had not vacated the premises.

On March 14, a rule to show cause why the confessed judgment should not be stricken was entered, based on plaintiff's allegations that the judgment was defective on its face. Plaintiffs' petitioned in the alternative for a reopening of the judgment based on a denial of the allegations as to default made in the complaint. On March 26, a letter was sent by Mr. Kissel to plaintiffs' attorney stating that defendants wished to initiate contempt of court proceedings against the plaintiffs for reentering the apartment in violation of the judgment. On March 27, the confessed judgment was stricken. On April 4, this action was filed.

Plaintiffs' lease term expired on June 30, 1980, plaintiffs having been given notice on April 10, 1980 that the lease would not be renewed. On July 7, 1980 defendants filed a landlord and tenant complaint for possession of the premises, which was withdrawn. Plaintiffs vacated the premises on or about August 31, 1980.

In deciding these cross-motions for summary judgment, we must determine whether any disputed issues of material fact exist which would preclude the entry of summary judgment. As to issues of fact, all reasonable inferences must be drawn in favor of the party against whom summary judgment is sought. Whenever the moving party relies upon an affidavit or depositions, the opposing party must come forward with affidavits, depositions, or answers to interrogatories sufficient to contradict the movant's showing. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 158–61, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970). Fed.R. Civ.P. 56(e).

*Plaintiffs' Federal Claims*

■ Plaintiffs' assertion that defendants' actions constitute a violation of 42 U.S.C. § 1985, which forbids conspiracies entered into "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws ...", need not detain us long. Even had plaintiffs made a sufficient allegation of a conspiracy to deprive them of their civil rights, which, as discussed below, we believe they have not, plaintiffs have not alleged, nor are there any facts in this

case which would show, the "racial, or perhaps otherwise class-based, invidiously discriminatory animus" necessary to sustain a § 1985 cause of action under the Supreme Court's holding in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Moreover, a class of residential tenants, or of those who have had writs of possession issued against them, is not a class protected by § 1985. *Banghart v. Sun Oil of Pennsylvania,* 542 F.Supp. 451 (E.D. Pa.1982); *See Carchman v. Korman Corporation,* 594 F.2d 354 (3d Cir.1979). Summary judgment must therefore be granted for the defendants on plaintiffs' § 1985 claim.

Plaintiffs allege three bases for their claim that defendants deprived them of liberty or property without due process of law in violation of 42 U.S.C. § 1983. The first, that defendants' agents together with a police officer unlawfully detained plaintiff Isabel Tallon, we reject based on our determination, discussed below, that no such unlawful detention has been shown. Plaintiffs also allege that the confession of judgment procedure used by the defendants violated the Constitutional requirements for such procedures set forth in *Swarb v. Lennox,* 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972) and that, acting under color of law, defendants caused a procedurally and substantively defective confession of judgment to be entered. For the reasons below, summary judgment must be granted defendants on these claims as well.

■ To show a violation of 42 U.S.C. § 1983, plaintiffs must show that they were deprived by conduct "fairly attributable to the state" of a right secured by the Constitution and laws of the United States. *Lugar v. Edmonson Oil Co., Inc.,* —— U.S. ——, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). In the present case, although defendants' actions did not cause substantial physical interference with plaintiffs' use of their property, for the purpose of deciding these summary judgment motions the Court will assume that the plaintiffs were deprived of a property interest.

Entry of judgment in ejectment and issuance of a writ of possession entitles the party obtaining judgment to possession of the premises described by the writ. The occupants of the premises might, therefore, become trespassers, not tenants. Defendants therefore might be held to have deprived, and may actually have deprived, plaintiffs of their right to lawful possession of the premises. Moreover, through the actions of their agents in visiting the premises with a police officer and through their expression of intent to file contempt proceedings against the plaintiffs, defendants indicated to plaintiffs that they considered plaintiffs' occupation of the premises following the issuance of the writ to be unlawful. Under these circumstances, defendants' actions will be assumed to have interfered with plaintiffs' use and enjoyment of the premises sufficiently to constitute deprivation of a property right. *See Simkins Industries v. Fuld & Co.,* 392 F.Supp. 126, 129 (E.D.Pa.1975) (service of writ of attachment on garnishee held sufficient deprivation of property to ground malicious prosecution action); *Chrysler Corp. v. Fedders Corp.,* 670 F.2d 1316, 1328 (3d Cir.1982) (filing of a *lis pendens* constitutes some deprivation of property even though property owner does not suffer at all in possession or use of property).

■ Deprivation of a property right does not constitute a § 1983 violation, however, unless the deprivation violates a federal right and is fairly attributable to the state. *Lugar v. Edmonson Oil,* 102 S.Ct. at 2754, set out a two-part approach to the question of "fair attribution":

First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible .... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.

The *Lugar* court noted that without a showing that activity can be fairly attributed to the state, there can be no "state action" for Fourteenth Amendment purposes. *Id.*

There is no question that were plaintiffs to show in this case that the Pennsylvania confession of judgment procedure is unconstitutional or that defendants, in following a procedure or rule of conduct imposed by the state, violated a federal right of the plaintiffs a violation of section 1983 would be made out. *Lugar,* 102 S.Ct. at 2752. In such a case, sufficient participation with state officials would be shown by the sheriff's execution of the writ of possession. *Rendell-Baker v. Kohn,* —— U.S. ——, 102 S.Ct. 2764, 2770 n. 6, 73 L.Ed.2d 418 (1982). *See Chrysler Corp. v. Fedders Corp.,* 670 F.2d at 1326. Plaintiffs have not, however, made out a challenge to the constitutionality of the state procedure itself or shown that defendants, in following a procedure or rule of conduct imposed by the state caused them harm.

In *Swarb v. Lennox,* 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), the Supreme Court affirmed a three judge District Court's holding that the Pennsylvania confession of judgment procedure complied with due process requirements if understanding and voluntary consent was given by the debtor, although an affirmative showing that the waiver was voluntary and knowing would be required when confession was sought against non-mortgage debtors with incomes less than $10,000 per year. Plaintiffs cannot rely on any failure by defendants to meet the waiver requirement as set forth in *Swarb* with respect to the confession of judgment provisions in the lease signed by Ms. Chicarelli, as Ms. Chicarelli's deposition testimony established that at the time she entered into the lease her income was greater than $10,000 per year. The requirements of *Swarb* were thus not applicable to her.

■ Further, plaintiffs have made no allegation or factual averment that the confession provision in Ms. Chicarelli's lease failed to give adequate notice of the procedure, that she could not understand it, or

that she was forced to rely on Plymouth Gardens' representations in a situation of unequal bargaining power. Under these circumstances, Ms. Chicarelli's signature on the lease was a proper acceptance of the confession of judgment provision in the lease. *Plum Tree, Inc. v. Seligson,* 224 Pa. Super. 471, 307 A.2d 298 (1973). *See Exxon Corp. v. Wilson,* 495 Pa. 553, 434 A.2d 1229 (1981); *Provco Leasing Corp. v. Safin,* 265 Pa.Super. 423, 402 A.2d 510 (Pa.Super. 1979); *See also SMI Industries, Inc. v. Lanard and Axilbund, Inc.,* 481 F.Supp. 459 (E.D.Pa.1979) (noting constitutionality of confession of judgment clauses).

■ It appears that in this case there were defects in the confession of judgment proceeding, in that the complaint and affidavit were not properly signed, and that irregularities may have existed in the mailing of notice. At most these defects indicate non-compliance with the Pennsylvania Rules of Civil Procedure. *See* Pa.R.C.P. 1023, 1024(a). It scarcely needs saying, however, that such defects do not in and of themselves constitute a violation of § 1983. Moreover, as three justices of the Supreme Court have noted, the same result would hold even if the procedural defects were themselves serious enough to deprive plaintiffs of a federal right:

If there should be a deviation from the state statute—such as a failure to give the notice required by the state law—the defect could be remedied by a state court and there would be no occasion for § 1983 relief .... Under this approach, the federal courts do not have jurisdiction to review every [foreclosure] proceeding in which the debtor claims there has been a procedural defect constituting a denial of due process of law. Rather, the federal court's jurisdiction under § 1983 is limited to challenges to the constitutionality of the state procedure itself ...

*Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 176–78, 98 S.Ct. 1729, 1743–44, 56 L.Ed.2d 185 (Stevens, J., dissenting). *See Lugar v. Edmonson Oil,* 102 S.Ct. at 2757.

■ The Pennsylvania procedure for confession of judgment does provide a means

for plaintiffs to correct errors in the procedure. Pa.R.C.P. 2959(b). In fact, plaintiffs used these means successfully in the present case. Thus, the plaintiffs have failed to show that they were deprived of any federal right because of the unconstitutionality of the established state confession of judgment procedure.

■ Just as the procedural defects alleged by plaintiffs may not form the basis of § 1983 liability, neither can the substantive misuse of the procedure by defendants alleged by plaintiffs, i.e., the initiation of the procedures maliciously and without probable cause, form the basis of such liability. In *Lugar v. Edmonson Oil,* for example, plaintiffs attacked the constitutionality of a state prejudgment attachment provision, alleging as the basis for state action the execution of a writ by a county sheriff. The Supreme Court held that the plaintiff "did present a valid cause of action under § 1983 insofar as he challenged the constitutionality of the Virginia statute; he did not, insofar as [he] alleged only misuse or abuse of the statute." 102 S.Ct. at 2757. The distinction made is between unlawful use of a valid statute and lawful use of a prohibitory statute. *See Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1240 (5th Cir.1981). Numerous cases have recognized this distinction by holding that private misuse of a state procedure did not constitute "state action", even though it involved substantial use of the state's enforcement machinery. *Dahl v. Akin,* 630 F.2d 277, 280–82 (5th Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1977, 68 L.Ed.2d 296 (1981), held that § 1983 did not provide a remedy against a private party who in bad faith initiated litigation which led to the civil commitment of a relative, even though in the course of the litigation the state had ordered the plaintiff stripped of control over all of his property and taken from his home to be placed in a mental institution. Similarly, in *Beker Phosphate Corp. v. Muirhead,* 581 F.2d 1187 (5th Cir.1978), the same court held that the systematic use of unfounded or even malicious suits did not give rise to a § 1983 claim, particularly where the state provided a remedy for such misuse. Likewise, in *Weisman v. Sherry,* 514 F.Supp. 728 (M.D.Pa.1981), the court held that the filing of a private criminal complaint, even if made in bad faith and without probable cause, did not constitute state action. *See Switlik v. Hardwicke Co., Inc.,* 651 F.2d 852, 860 (3d Cir.1981) (Hunter, J., concurring) (no cause of action is asserted under § 1983 if the state merely provides the forum, with no interest in the outcome).

■ Defendants' action does not become attributable to the state because an attorney was involved. It is well-settled that the actions of an attorney in representing a private client, including the use of process, do not constitute state action. *Henderson v. Fisher,* 631 F.2d 1115, 1119 (3d Cir.1980); *Arment v. Commonwealth National Bank,* 505 F.Supp. 911 (E.D.Pa.1981). Moreover, an attorney does not become a state actor merely because his misuse of process leads to a state enforcement proceeding. *Raitport v. Provident National Bank,* 451 F.Supp. 522 (E.D.Pa.1978). *See Dahl,* 630 F.2d 277.

Finally, we cannot find that the private action here was so "clothed with the authority of state law" as to be considered state action. *See United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). As the Supreme Court has recently stated:

> . . . although the factual setting of each case will be different, our precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the state responsible for those initiatives under the terms of the Fourteenth Amendment.

*Blum v. Yaretsky,* —— U.S. ——, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) (citations omitted).

It could not in this case seriously be argued that the state encourages, authorizes, compels, or otherwise places its imprimatur on the private misuse or abuse of process. Any failure of the state to prevent such misuse or abuse of process is of no moment, for the state is in no way responsible for otherwise purely private decisions which it permits but does not compel. *Flagg Bros. v. Brooks,* 436 U.S. 149, 164–65, 98 S.Ct. 1729, 1737–38, 56 L.Ed.2d 185 (1978); *Parks v. "Mr. Ford",* 556 F.2d 132, 136 (3d Cir. 1977) (*en banc*). In sum, the touchstone of § 1983 is some custom, usage, law or procedure of the state, not the action of a private party. *Banghart v. Sun Oil,* 542 F.Supp. at 455; *Weiss v. Willow Tree Civic Assn,* 467 F.Supp. 803, 810 n. 15 (S.D.N.Y.1979).

Plaintiffs' only means for attributing the defendants' conduct to the state in this case in order to make out a successful claim under § 1983 would thus be to allege and show the involvement of a state official in a conspiracy or understanding to deprive plaintiffs of their Fourteenth Amendment rights. *See Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). Section 1983 liability will attach to a private party where he is a willful participant in joint activity with the state or its agents. *Id.* If such a conspiracy is shown, the private parties are not absolved of liability because one or all of the co-conspirators who are state actors or officials are immune or because one or all of the state co-conspirators are not joined in the case, or are dismissed from the case. *Dennis v. Sparks,* 449 U.S. 24, 27–30, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980).

It is not enough, however, for a plaintiff to make merely broad or conclusory allegations concerning the existence of such a conspiracy or to show only that a state official took some action which was, in some way, unfavorable to him. *Dennis,* 449 U.S. at 28, 101 S.Ct. at 186; *Rotolo v. Borough of Charleroi,* 532 F.2d 920 (3d Cir. 1976); *Glaros v. Perse,* 628 F.2d 679 (1st Cir.1980); *Raitport v. Provident National Bank,* 451 F.Supp. 522 (E.D.Pa.1978). Neither is it enough to show that the private and state actors might have had a common goal or acted in concert, unless there is a showing that they directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement. *Tarkowski v. Bartlett Realty,* 644 F.2d 1204 (7th Cir.1980). Rather, plaintiffs must allege with sufficient particularity and show with specific material facts that the private party and a state official or actor reached some understanding or agreement, or plotted, planned and conspired together, to deprive plaintiffs of a federal right. *Slotnick v. Staviskey,* 560 F.2d 31 (1st Cir.1977) *cert. denied* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978); *Celano v. Celano,* 537 F.Supp. 690 (E.D.Pa.1982); *Safeguard Mutual Ins. Co. v. Miller,* 477 F.Supp. 299 (E.D. Pa.1979).

Plaintiffs' allegations, affidavits, and depositions in this case simply do not raise a significant issue of material fact concerning the existence of any conspiracy between the defendants and any state actors to deprive plaintiffs of a federally-protected right. Plaintiffs' only allegations concerning the involvement of state officials in this case are that "defendants purported to evict plaintiffs from said apartment by entering the said apartment with a deputy of the sheriff of Montgomery County who placed the notice of eviction on the kitchen table in said apartment and changed the locks in the absence of plaintiffs," and that "defendants entered the apartment against the expressed desires of plaintiff, Isabel Tallon, who is 71 years old, with a member of the Plymouth Township Police Department, who detained her and who were there for the purpose of arresting the plaintiffs for the purpose of being in contempt of the order of conviction." Plaintiffs also apparently allege, though not specifically, that the Prothonotary was a part of this conspiracy in his entry of the judgment and his issuance of the writ. Defendant's attorney, as discussed previously, was not a state actor for conspiracy purposes or any other purposes.

Nowhere have the plaintiffs alleged or averred the existence of an agreement,

understanding, or conspiracy to deprive plaintiffs of any federal right; nor do the affidavits, depositions or answers to interrogatories contain any factual averments which would tend to show such agreement, understanding or conspiracy. Plaintiffs appear to rely solely on the actions of the sheriff's deputy and police officer pursuant to the writ of possession. The mere initiation of legal proceedings by a private party, pursuant to state law and procedure, is not sufficient to constitute joint participation or conspiracy with state officials later involved in the proceedings. *Lugar v. Edmonson Oil*, 102 S.Ct. at 2755 n. 21. *See Everett v. City of Chester*, 391 F.Supp. 26, 29 (E.D.Pa.1975) (conspiracy claim insufficient where unsupported by factual allegations regarding agreement, membership, formulation, or purpose of alleged conspiracy).

There is no genuine issue of material fact in this record as to the existence of any conspiracy, nor are there any facts of record from which a reasonable inference of a conspiracy could be drawn. This is not a case where the gravamen of the wrong alleged by plaintiffs was an abuse of an official position of authority. *Cf. Jennings v. Shuman*, 567 F.2d 1213 (3d Cir.1977). In addition, the averment offered by plaintiffs that some Plymouth Township Police Officers are employed as part-time security guards by defendants provides no basis for inferring that the officer who visited plaintiffs' apartment entered into any agreement to deprive plaintiffs of any federal rights.

For all of the above reasons, plaintiffs have failed to show that there is any genuine issue of material fact which would prevent judgment as a matter of law for the defendants on plaintiffs' claims under 42 U.S.C. § 1983.

*Plaintiffs' State Law Claims*

Plaintiffs, invoking diversity jurisdiction under 28 U.S.C. § 1332, have asserted state law claims of false arrest, false imprisonment, defamation, malicious use of process and abuse of process, seeking compensatory and punitive damages in excess of $10,000. Relying on information in the fictitious name register of Montgomery County, plaintiffs have alleged that all individual defendants, who constitute an unincorporated association, are citizens of states other than Pennsylvania. An unincorporated association has no jurisdiction for diversity purposes apart from that of its members; hence, this allegation, uncontradicted by any evidentiary matter of the defendants, is controlling for the purposes of determining diversity of citizenship. *Local No. 1 Broadcast Employees v. International Brotherhood of Teamsters*, 614 F.2d 846 (3d Cir. 1980). Since it does not appear to a legal certainty that each plaintiff's claim for actual and punitive damages amounts to less than $10,000, this court has diversity jurisdiction over plaintiffs' state law claims. *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Beckerman v. Sands*, 384 F.Supp. 1296 (S.D.N.Y. 1974). Though the parties have not discussed the issue, it appears that the law of Pennsylvania should be applied in this case, since the torts alleged all took place within Pennsylvania, and plaintiffs are citizens of Pennsylvania whom the state has an interest in protecting from tortious conduct.

*False Arrest and False Imprisonment*

Plaintiffs allege that plaintiff Isabel Tallon was falsely arrested and imprisoned when a police officer and several agents of the defendant came to plaintiffs' apartment on March 13, 1980. Under Pennsylvania law, when a defendant purports to act to administer the law without legal justification, as plaintiffs allege here, "false arrest" is not an independent ground of liability and false arrest and false imprisonment become synonymous. *Gagliardi v. Lynn*, 446 Pa. 144, 285 A.2d 109, 111 (1971). Therefore, we will begin our discussion by analyzing the elements of false imprisonment.

In addition to unlawful activity, Pennsylvania law requires (1) acts intending to confine another within boundaries fixed by another which (2) directly or indirectly result in such confinement (3) of which the plaintiff is conscious or by which the plaintiff is harmed. 285 A.2d at 111 n. 2. Re-

statement (Second), Torts § 35. Confinement may be effected by physical barriers or physical force, by submission to a threat to apply physical force, or by taking a person into custody under an asserted legal authority. Restatement (Second), Torts §§ 38–41. The confinement within the boundaries fixed by the defendant must be complete; if there is a known, safe means of escape, involving only a slight inconvenience, there is no false imprisonment. § 36, comment (a); *Faniel v. Chesapeake and Potomac Telephone Co. of Maryland,* 404 A.2d 147 (D.C.App.1979). Further, unless physical force or physical barriers are used, there must be some sort of verbal threat to effect the confinement. *Herbst v. Wuennenberg,* 266 N.W.2d 391, 83 Wis.2d 768 (1978). Finally, plaintiff must make some request to leave, which request is denied by the defendant, that is, plaintiff must attempt to determine whether his belief that his freedom of movement has been curtailed has basis. *Id.*

Based on the uncontradicted deposition testimony of Isabel Tallon, and the absence of any other averments concerning the alleged false imprisonment, the Court concludes that the uncontested facts show that Ms. Tallon was not falsely imprisoned. First, Ms. Tallon did not state or indicate that she was confined. She testified, in fact, that during the time the policeman was in her apartment the door was open and that other men who had accompanied the policeman were out in the hall, indicating that her freedom of movement was not blocked. Second, Ms. Tallon testified that the policeman did not threaten her in any way, that he did not say that he was going to arrest her, and that no physical force was used. The entire substance of the policeman's conversation with Ms. Tallon was his comment "you were supposed to be out" and her response "You can talk to my daughter," upon which the policeman spoke briefly to Ms. Chicarelli on the telephone and left. Ms. Tallon also testified that none of the other men threatened her in any way. Finally, Ms. Tallon has nowhere alleged, averred, or testified that she requested or desired to leave, or requested that the police officer leave, and that such request or desire was denied by the police officer or anyone else. Based on these facts, plaintiffs have made no showing of false imprisonment of Ms. Tallon, and hence no showing of false arrest. Summary judgment on the claims of false arrest and false imprisonment will be granted the defendant.

## Defamation

Plaintiffs allege that defendants "caused a suit defaming plaintiffs to be issued in the Court of Common Pleas of Montgomery County, Pennsylvania." The uncontested facts show no other allegations or averments concerning any other defamation by the defendants. There is no genuine issue of material fact concerning the claim of defamation. Under Pennsylvania law, a party is absolutely privileged in its publication of defamatory matter in communications preliminary to a proposed judicial proceeding, in the institution of it, or during the course of and as a part of it, if the matter has some relationship to the proceeding. *Triester v. 191 Tenants Assn.,* 272 Pa.Super. 271, 415 A.2d 698 (1979). Since the alleged defamation occurred in the course of judicial proceedings, and concerned the conduct of one or more of the plaintiffs, which conduct was an issue raised in and hence related to the proceedings, it cannot form the basis of a defamation claim by the plaintiffs, and summary judgment on the defamation claim will be granted for defendants.

## Abuse of Process and Malicious Use of Civil Process

Pennsylvania courts have made a distinction between the torts of abuse of process and malicious use of process. Malicious use of process is the initiation of legal proceedings with malice and without probable cause, which proceedings terminate favorably to the party against whom they were initiated. At the time plaintiffs' cause of action for malicious use of civil process arose (i.e., prior to February 17, 1981), in-

terference with the plaintiff's person or property was required. *Jennings v. Shuman,* 567 F.2d 1213 (3d Cir.1977); *Sheridan v. Fox,* 531 F.Supp. 151 (E.D.Pa.1981); *Publix Drug Co. v. Breyer Ice Cream Co.,* 347 Pa. 346, 32 A.2d 413 (1943). *Cf.* 42 Pa.C. S.A. §§ 8351–54.

Abuse of process is the initiation of process for an unlawful purpose, that is, a purpose other than that which the process is intended by the law to effect. The questions of malice and probable cause are irrelevant. *Jennings,* 567 F.2d at 1217–18. The gist of an abuse of process action is improper use of the process after its issue—the perversion of it to accomplish an ulterior purpose for which it is not designed. *Sachs v. Levy,* 216 F.Supp. 44 (E.D.Pa.1963); *Blumenfeld v. R.M. Shoemaker Co.,* 429 A.2d 654 (Pa.Super.1981); *DiSante v. Russ Financial Co.,* 251 Pa.Super. 184, 380 A.2d 439 (1977). This tort requires an interference with the plaintiffs' person or property. *Blumenfeld,* 429 A.2d at 656, n. 3.

The Supreme Court of Pennsylvania has held that a plaintiff's action against a defendant for maliciously causing judgment to be entered against him has to do with the initiation of proceedings and not the perversion of them, and hence can state a cause of action for malicious use of civil process but not for abuse of process. *Publix Drug Co. v. Breyer,* 32 A.2d at 414–15. Therefore, under the undisputed facts in this summary judgment determination, no cause of action for abuse of process can be sustained. The purpose of obtaining a judgment in ejectment and a writ of possession is to obtain possession of property from the occupants. Plaintiffs' suggestion that a judgment in ejectment for possession of real property may not be confessed against a lessee is untenable in light of Rules 2970–76 of the Pennsylvania Rules of Civil Procedure which set out procedures for a confession of judgment for possession of real property, and in light of Pennsylvania decisions allowing judgment to be so confessed. *See, e.g., Exxon Corp. v. Wilson,* 495 Pa. 553, 434 A.2d 1229 (1981); *Pawco, Inc. v. Bergman Knitting Mills,* 424 A.2d 891 (Pa.

Super.1980). Since the uncontested facts in this case show that defendants initiated and pursued the action against the plaintiffs in order to obtain possession of the premises, and since there is no genuine issue of a material fact showing any other purpose, summary judgment must be granted for defendants on plaintiffs' claim for abuse of process.

Plaintiffs' remaining claim is for malicious use of civil process, the elements of which have been set out above. As heretofore pointed out, we are proceeding on the assumption that defendants' actions interfered with a property right of the plaintiffs, and that the striking of the confessed judgment on March 27, 1980 constituted termination of the defendants' proceedings against the plaintiffs in plaintiffs' favor. Therefore, the two issues remaining for examination concern the existence of malice and probable cause. Since the existence of malice may be inferred from defendants' lack of probable cause in instituting the proceedings, *Rushton v. Shea,* 419 F.Supp. 1349, 1368 (D.Del.1976) (applying Pennsylvania law); *Hugee v. Pennsylvania Railroad Co.,* 376 Pa. 286, 101 A.2d 740, 743 (1954), and since the existence of probable cause makes the existence or absence of malice immaterial, *DeSalle v. Penn Central Transportation Co.,* 263 Pa.Super. 485, 398 A.2d 680 (1979), our task is one of determining whether any genuine issue of material fact exists with respect to defendants' probable cause for instituting the suit.

Under Pennsylvania law, the question of probable cause is ordinarily a question for the court, although the issue may be sent to the jury if the facts concerning matters central to the determination of probable cause are unclear or disputed. *Baird v. Aluminum Seal Company,* 250 F.2d 595, 601 (3d Cir.1957); *DeSalle,* 398 A.2d at 683. Probable cause has been defined as "reasonable ground for an honest belief of the defendant in the validity of his cause of action," the test being an objective one. *Baird,* 250 F.2d at 601; *Rushton,* 419 F.Supp. at 1367–68. In the present case, the question becomes whether defendants

had reasonable grounds to believe that one or more of the plaintiffs was acting in an "improper or objectionable" manner in violation of the terms of their lease.

In response to plaintiffs' allegation that the institution of the ejectment proceedings was malicious and groundless, defendants filed an affidavit of their property manager, Stan Cowan, stating that the ejectment proceedings were instituted as a result of complaints and reports received in his office which showed Gregory Chicarelli's serious and continued course of conduct involving destruction and vandalism to defendants' property. Numerous incidents are listed in the affidavit, including climbing and cutting trees, damaging doors, defacing and damaging property by throwing mudballs at walls, a window, and a sign, breaking up a slab of slate, digging a hole, trying to break into a storage room and coin boxes, interfering with the operation of the washing machine and dryer vents, and several other incidents. The deposition testimony of defendants' attorney states that the decision not to contest plaintiffs' motion to strike the confessed judgment was based on a determination that contesting the matter would not be worth the time and cost and not on the basis of any recognition that there were no grounds supporting the allegation of a default in the terms of the lease. Defendants' attorney also stated in his deposition that there were several complaints from tenants that Gregory Chicarelli was damaging doors and climbing and breaking trees, and that information concerning Gregory's misbehavior was received from Ralph Frenkel, a maintenance man employed by defendants.

Plaintiffs, in response, filed an affidavit of Bessie Ascheman, who was office manager for defendants from October, 1976 to February 15, 1980. Her affidavit states that her job as office manager included the taking of complaints from the maintenance men concerning the tenants. She states in her affidavit that she received no complaints concerning Gregory Chicarelli from any person other than Ralph Frenkel, a maintenance man, and that she considered Mr. Frenkel's reports concerning Gregory

Chicarelli's wrongdoing to be insignificant and not based on his personal observation of Gregory's activity. Ms. Ascheman also avers that more significant complaints were made against other children whose families were not asked to move out. Plaintiffs also offer the deposition of Gregory Chicarelli in which he denied most of the acts of vandalism referred to in defendants' averments. Gregory did, however, admit to throwing mudballs at a sign and at the walls of some of the apartment buildings, to digging a hole with a screwdriver, to throwing apples with other children in the pool area, and to breaking up a piece of slate by the dumpster area.

The uncontested facts show that the defendants, in instituting the confession of judgment proceedings for possession of plaintiffs' apartment, relied upon the reports of Stan Cowan, their property manager, and Ralph Frenkel, the maintenance man. There is no genuine issue of material fact that such reports were made to the defendants, stating that complaints had been received concerning Gregory Chicarelli's conduct involving vandalism to defendants' property. Although only some of the acts of vandalism which were attributed to Gregory Chicarelli have been admitted by the plaintiffs, and although there are issues of fact raised in the depositions and affidavits concerning some of the acts of vandalism, the record shows that the defendants in relying upon the reports of their property manager and maintenance man had probable cause to believe that the plaintiffs were acting in an "improper or objectionable" manner in violation of the terms of their lease. Since the existence of probable cause can thus be determined without reliance on any disputed material facts, summary judgment for the defendants on plaintiffs' claim for malicious abuse of civil process in the initiation of the ejectment proceedings in March, 1980 must be granted.

Plaintiffs, in their amended complaint, also allege malicious use of civil process through defendants' filing on July 7, 1980 of a landlord and tenant complaint.

This landlord and tenant complaint alleges that the term of plaintiffs' lease had ended and that notice to plaintiffs to remove had been timely given. Since the uncontested facts show that although this complaint was filed, it was soon withdrawn, it in no way constituted the interference with plaintiff's person or property required under the Pennsylvania law at the time as a prerequisite for an action alleging malicious use of civil process. Summary judgment must, therefore, be granted defendants on this claim.

*Conclusion*

For all of the above reasons, plaintiffs' motion for summary judgment on the issue of liability is denied. Summary judgment is granted for defendants on all of plaintiffs' claims.

Defendants have requested that we include a reasonable attorney's fee as a part of the costs to be awarded in defendants' favor. 42 U.S.C. § 1988 allows the court, in its discretion, to award a reasonable attorney's fee as a part of the costs to a prevailing party in any action to enforce certain provisions of the civil rights laws, including 42 U.S.C. §§ 1983 and 1985. Fees may be awarded to a prevailing defendant only where the Court finds that the plaintiff's action was frivolous, unreasonable, or without foundation, or that plaintiff continued to litigate after the action clearly became so. *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 421–22, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978). Such a finding cannot be made merely on the basis that the plaintiff did not prevail in the lawsuit. *Id.* We find that plaintiffs' case was not frivolous, unreasonable or groundless at any point in this litigation. Further, plaintiffs' affidavits in support of their motion for summary judgment on the issue of liability do not appear to have been presented in bad faith or solely for the purpose of delay. *See* Fed.R.Civ.P. 56(g). Therefore, defendants' request for an award of attorney's fees will be denied.