Jennifer CASWELL, Plaintiff,

v.

**BJ'S WHOLESALE COMPANY and Qualex, Inc., Defendants.**

**Civil Action No. 97–CV–7187.**

United States District Court, E.D. Pennsylvania.

May 18, 1998.

---

W. Thomas Anthony, Jr., Bethlehem, PA, for Plaintiff.

Edward A. Greenberg, Fort Washington, PA, for Defendants.

### OPINION AND ORDER

VAN ANTWERPEN, District Judge.

## I. INTRODUCTION

Plaintiff has accused the Defendants of conspiring with the state police to violate her civil rights by turning over nine rolls of developed film to the state police and notifying that agency of the potential abuse of an infant pictured in some of those photographs. Though Plaintiff's complaint is poorly drafted, it appears that she is bringing federal claims for conspiracy to violate her Fourth and Fourteenth Amendment rights, along with state claims of false imprisonment, failure to return bailed property, theft, gross negligence, and violation of Article 1, Section 8 of the Pennsylvania Constitution which protects against unreasonable searches and seizures. The Defendants have moved for summary judgment. For the reasons that follow, Defendants' motion will be granted and Plaintiff's complaint will be dismissed with prejudice.

## II. FACTS

On October 20, 1997, Plaintiff took nine rolls of film to an outlet operated by Defendant Qualex (a photo processing lab) located on the premises of Defendant BJ's Wholesale Club in Allentown, Pennsylvania. She brought the film to the Defendants to be developed and printed.

The Plaintiff's film was developed by two Qualex employees: Christina Palumbo and Kathy Bauder. The employees noticed that

the first couple of rolls contained pictures of a naked adult female engaged in various sexually explicit acts, some with a dildo. As they continued to develop the film, they found (on a later roll) photos of an adult male with his tongue in an infant's ear, an adult male kissing the infant on her mouth (with adult's tongue possibly inserted inside the baby's mouth), the infant with what appears to be a lit cigarette in her mouth, and the infant, naked, with her legs spread and her genitals exposed. Some of the pictures revealed what appeared to be bright red spots on the child's genitals, as well as on other parts of her body. *See Palumbo Aff.* at 1–2 (*Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendants' Memorandum"),* Ex C); *Bauder Aff.* at 1–2 (*Defendants' Memorandum,* Ex. D); *Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment ("Plaintiff's Memorandum"),* Ex. D.[1]

Ms. Palumbo became disturbed by the photos of the child. According to her affidavit, Ms. Palumbo "believed that the child was being harmed and used by adults for their sexual pleasure." *Palumbo Aff.* at 2. She insisted that the store notify the police about the contents of the photographs. Before calling the police, Ms. Palumbo and Ms. Bauder showed the pictures to BJ's on-duty manager and also described the photos (over the phone) to the manager of Qualex, Inc. Both managers instructed the employees to contact the Pennsylvania State Police. The employees called the police and described the pictures to them. Trooper Timothy Mills was sent to investigate the report. After reviewing the photos, Trooper Mills confiscated all nine rolls of film.

The Plaintiff returned to the store to pick up her developed film and prints that same day. When she asked for her pictures, an employee working at the photo processing booth told her that there was a problem with her film and that the store manager needed to speak with her. *See Caswell Dep. 2/27/98* (*Defendants' Memorandum,* Ex. A) at 42–43. According to the Plaintiff, two male managers told her to accompany them to a room in

the back of the store. The managers then explained to the Plaintiff that they called the state police regarding the pictures. The managers spoke to the Plaintiff in the back room for ten minutes. The door to the room was open the entire time, though one of the managers, according to the Plaintiff, stood in front of the door. After ten minutes, the Plaintiff told the managers that she had to move her car from a no parking zone. She got up and exited the room by walking around the manager. At no point did either of the managers lay hands on the Plaintiff. There is no evidence that either of the managers threatened the Plaintiff while she was in the room. *Id.* at 46–48.

The managers followed the Plaintiff out of the store. As the Plaintiff approached her car a state trooper arrived. The Trooper told the Plaintiff that she need not bother moving her car. The Plaintiff called her attorney and then stood and argued with three state troopers for about half an hour. Finally, the Plaintiff told the troopers that she had to leave and a Trooper gave her the card of a criminal investigator who they told her she should see the next day. *Id.* at 48–50.

The following day Plaintiff visited a criminal investigator at the state troopers' barracks. At no point was she ever confined and she was told that she was free to leave at any time. *Id.* at 57. Plaintiff told the police that she took the nude pictures of the adult woman in order to help her friend get into the adult entertainment business. Plaintiff further told the police that the pictures of the infant's genitals were taken in order to document the baby's rash to verify possible child abuse by a babysitter. *Pennsylvania State Police Incident Report* (*Defendants' Memorandum,* Ex. E) at 4. Plaintiff explained that the other pictures of the child, including the one where the infant appeared to be smoking a lit cigarette, were just funny family pictures. *Id.; Caswell Dep. 2/27/97* at 27–31.

After investigation by the state police, the Lehigh Valley District Attorney's office declined prosecution calling this incident a de

---

1. We believe that the copies of the photographs should have been placed under seal for in camera review by the court and we will instruct the clerk to impound the same.

minimus infraction. *Pennsylvania State Police Incident Report* at 6. The state trooper returned the film to the photo store. The plaintiff picked up the pictures.

Plaintiff suggests that she believes that the reason the Defendants' employees reported the pictures to the police was to harass her. Plaintiff was involved in a lawsuit with BJ's over some chairs that she purchased there. *Caswell Dep. 2/27/98* at 61. And Plaintiff feels that the employees at BJ's generally treat her badly and give her dirty looks. *Id.* at 63–64. However, Plaintiff admits that she had never seen any of the people at the photo booth involved in this incident before that day and that they probably did not know her. Plaintiff also admits that she does not know the managers involved in this incident who asked her to accompany them to the room in the back of the store. And, when Plaintiff was first asked why the employees may have wanted to harass her, she responded that she had no idea. *Id.* at 55–56.

In her own words, the Plaintiff has brought this suit because

[t]hey stole my pictures. There is no sign in fucking Qualex or BJ's that said, you know, that they steal pictures. You're supposed to get the fucking pictures developed and thats it. I mean, this is bullshit.... [The store] fucking detained me there. They made me look like an asshole. They humiliated me in front of all these people at the store. They had me waste my time to go and talk to them. They stole my pictures. They—they ruined my trust agreement with Jennifer Cole. They totally got involved where they shouldn't. They totally got into my privacy by stealing pictures, giving them to who knows where, who knows what.

*Id.* at 67, 74.

Plaintiff also seems to be upset that a number of pictures are missing and that she got single, instead of double, prints. *Id.* at 66. However, Jennifer Cole (the subject in the majority of the pictures, whose own suit against the Defendants was recently dismissed) has destroyed some or all of the photographs, despite a magistrate's order to produce the pictures. *See Cole v. BJ's*

*Wholesale Club,* No. Civ.A. 97–7186, 1998 WL 195638, *1, *1–2 (E.D.Pa. April 1, 1998).

We will now examine whether Plaintiff's case can survive Defendants' motion for summary judgment. We find that it cannot.

## III. DISCUSSION

### A. Standard for Summary Judgment

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* 477 U.S. at 248, 106 S.Ct. 2505. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *Carnegie Mellon Univ. v. Schwartz,* 105 F.3d 863, 865 (3d Cir.1997).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* 477 U.S. at 321 n. 3, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 56(e)); *see also First National Bank of Pennsylvania v. Lincoln National Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505.

### B. State Claims Relating to the Seizure of the Photographs

Plaintiff appears to bring a number of state claims against the Defendants for their actions in turning her photographs over to

the state police. These include claims of failure to return bailed property, theft, gross negligence, and violation of Article 1, Section 8, of the Pennsylvania constitution which protects against unreasonable searches and seizures. All of these claims must be dismissed because the Defendants are protected by the Pennsylvania Child Protective Services Law, 23 Pa.C.S.A. § 6318.

Section 6318 of the Pennsylvania Child Protective Services Law ("PCPSL") protects persons and institutions who make a good faith report of suspected child abuse to law enforcement from civil and criminal liability. Though we find that Defendants are not entitled to a presumption that they acted in good faith available to certain persons who are required to report suspected child abused, we still find that all of Plaintiff's state claims must be dismissed under this act.

The PCPSL states, in part, that:

(a) General rule.—A person, hospital, institution, school, facility, agency or agency employee that participates in good faith in the making of a report, cooperating with an investigation, testifying in a proceeding arising out of an instance of suspected child abuse, *the taking of photographs* or the removal or keeping of a child pursuant to section 6315 (relating to taking child into protective custody), and any official or employee of a county agency who refers a report of suspected abuse to law enforcement authorities or provides services under this chapter, shall have immunity from civil and criminal liability that might otherwise result by reason of those actions. (b) Presumption of good faith.—For the purpose of any civil or criminal proceeding, the good faith of a person required to report pursuant to section 6311 (relating to persons required to report suspected child abuse) and of any person required to make a referral to law enforcement officers under this chapter shall be presumed.

28 Pa.C.S.A. § 6318. (emphasis added)

■] Defendants are not entitled the presumption of good faith discussed in section b of the statute. Photography lab workers are not persons required to report suspected child abused under 28 Pa.C.S.A. § 6311

which covers "[p]ersons who, in the course of their employment . . . come into contact with children[.]" According to the plain language of the statute, § 6311 covers members of those professions who regularly meet with children. This interpretation is borne out by § 6311(b) which lists, as examples of persons required to report, doctors, nurses, clergy members, teachers, police, and social workers. Photo lab workers may see pictures of children, but they do not come into contact with children in the same way that doctors or teachers do. We have found no Pennsylvania cases that extend § 6311's requirements to photo lab workers. Therefore, we believe that Defendants were not required to report the photographs to the police under § 6311 and Defendants are not entitled to the presumption of good faith provided by § 6318(b).

■ Even without the good faith presumption, Defendants are covered by § 6318(a) as a matter of law. Defendants have presented ample evidence that they reported the pictures of the Police in good faith. Ms. Palumbo's affidavit affirmatively states that she believed that the infant was in danger of being harmed and used by adults for their sexual pleasure. Given the nature of the photographs of the infant, and the fact that they were developed along with seven rolls of pornographic pictures, Ms. Palumbo's instinct was only natural. Indeed, at least one of the photos (the close-up picture of the infant's genitals) could have been evidence of per se sexual abuse of a child in violation of 18 Pa.C.S.A. § 6312 which prohibits the photographing of a lewd exhibition of a child's genitals. And, we doubt that even the staunchest smoking advocate would disagree with the contention that providing a two month old infant with a lit cigarette to smoke is abusive. Furthermore, Plaintiff admits that the reason that the close-up picture of the infant's genitals was taken in the first place was to document the possible sexual abuse of the child. This evidence of possible sexual abuse was evident not only to the Plaintiff, but to the Defendants' employees as well. Thus, the Defendants had every reason in the world to report these photographs to the proper authorities. Furthermore, the

Defendants' employees did not just rush to call the police. Instead, they first discussed their options with two managers. *See Palumbo Aff.; Bauder Aff.* Hence, Defendants have provided ample evidence that their report to the state police was made in good faith.

Plaintiff has provided no evidence to rebut the Defendants' showing that the report to the police was made in good faith. Plaintiff believes that BJ's has a vendetta against her because of an incident where she returned some chairs to the store, *Caswell Dep. 2/27/98* at 61–62. However, Plaintiff admits that she does not know the motivation of the people who turned in the pictures to the police. *Id.* at 57. And, Plaintiff further states that she had never met (before this incident) either the lab workers who initially reported the photos to the police or the managers who allegedly detained her at the store. *Id.* at 55–56. Thus, Plaintiff has failed to provide any evidence rebutting the Defendants' showing that its report to the police was made in good faith. Therefore, we find that the Defendants are covered by PCPSL § 6318 and are thus immune to all of Plaintiff's state claims related to the seizure of the pictures.[2]

### C. Federal Claims Relating to the Seizure of the Photographs

█ Plaintiff has also sued the Defendants under the United States Constitution for reporting the pictures to the state police. Her complaint alleges that the Defendants entered into a conspiracy with the state police to violate her Fourth and Fourteenth Amendment rights by depriving her of her property without due process of the law and by allowing the police to seize the photographs without a search warrant. *See Complaint* at ¶¶ 15–19. Defendants argue that these claims must be dismissed under the PCPSL. We are prevented from doing so because the Supremacy Clause of the U.S. Constitution prevents states from immunizing individuals who are alleged to have violated federal law. Thus, the PCPSL "cannot

immunize the defendants from liability resulting from a violation of federal law, and therefore cannot serve as a basis for upholding ... summary judgment in their favor." *Good v. Dauphin County Social Services for Children and Youth,* 891 F.2d 1087, 1090–91 (3d Cir.1989). Nonetheless, despite the fact that the PCPSL cannot apply to federal claims, the Plaintiff's Fourth and Fourteenth Amendment claims against the Defendants must still be dismissed. First of all, Plaintiff's complaint makes no mention of any federal statute in his complaint. Plaintiff is basing her claims directly on the constitution; she never once invokes § 1983 or any other comparable civil rights statute. We refuse to hear any claims brought directly under the Constitution when they should have been brought under § 1983. *See Rogin v. Bensalem Township,* 616 F.2d 680, 686–87 (3d Cir. 1980), *cert. denied* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *DiGiovanni v. City of Philadelphia,* 531 F.Supp. 141, 144 (E.D.Pa.1982).

█ However, even had Plaintiff properly brought her federal claims under § 1983 and its progeny, it would still have to be dismissed. Any § 1983 claim brought by the Plaintiff would have to be dismissed because there is no evidence of state action. Indeed, "[g]enerally merchants are not considered to be acting under the color of law for the purposes of 1983 when they detain a person suspected of shoplifting or other crimes, call the police, or make a citizen's arrest." *Jones v. Wal–Mart,* 33 F.3d 62, 1994 WL 387887, **1, **3 (10th Cir. July 27, 1994)(Table). *See also Cruz v. Donnelly,* 727 F.2d 79, 81 (3d Cir.1984); *Chapman v. Acme Markets, Inc.,* No. Civ. A. 97–6642, 1998 WL 103379, *1 (E.D.Pa. Feb.24, 1998). Indeed, there is no evidence in this case that the Defendants "assume[d] the authority of the state, through enforceable custom or law, in conjunction with state officials[.]" *Cruz,* 727 F.2d at 80. All the Defendants did was report a possible crime and turn over the pictures to the police upon their request.

2. We find, however, that the statute does not provide immunity against the Plaintiff's false arrest claims. The act of illegally seizing another person is independent from and not necessary to reporting suspected child abuse. We will therefore analyze these claims separately.

Given these facts, Defendants cannot be found liable under § 1983.

 Furthermore, Plaintiff has no cognizable claim under § 1985(3). Though state action is not required under this statute prohibiting conspiracy to deprive the rights guaranteed by the Constitution, there must be some cognizable class which is the object of the conspiracy. *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Eline v. Eline,* No. Civ. A. 95–CV–1694, 1995 WL 653988, *1 (E.D.Pa. Nov.6, 1995); *Rourke v. United States,* 744 F.Supp. 100, 105 (E.D.Pa.1988), *aff'd* 909 F.2d 1477 (3d Cir.1990). Here, Plaintiff makes no allegations that she was harassed, for instance, because she was a member of a racial minority. Additionally, it is axiomatic that in order to succeed under § 1985 there must be some proof of a conspiracy. *Griffin,* 403 U.S. at 96–100, 91 S.Ct. at 1795–1798. No such proof exists in this case. There is no evidence of any agreement between the Defendants' employees and the police to violate the Plaintiff's civil rights. The Defendants' employees merely called the police to report a well grounded suspicion of a serious crime. Thus, had Plaintiff properly raised her federal claims under §§ 1983 and 1985, these claims would still fail on summary judgment.

## D. State and Federal False Imprisonment Claims

] Plaintiff's claim against the Defendants for false imprisonment must be dismissed because, even assuming that all of Plaintiff's accusations are true, she cannot make out her prima facie case under the laws of Pennsylvania. In the Commonwealth, an actor is liable for false imprisonment if: (1) she acts intending to confine a person within boundaries fixed by the actor; (2) her act directly or indirectly results in such confinement of that person, and (3) the person confined is conscious of the confinement or is harmed by it. *Krochalis v. Insurance Co. of North America,* 629 F.Supp. 1360, 1370 (E.D.Pa.1985); *Chicarelli v. Plymouth Garden Apartments,* 551 F.Supp. 532, 540–41 (E.D.Pa.1982). The confinement of the Plaintiff must be complete. If a known, safe

means of escape, involving only a slight inconvenience, exists then there is no false imprisonment. *Chicarelli,* 551 F.Supp. at 541. Furthermore, unless physical force or physical barriers are used, there must be some sort of verbal threat to effect the plaintiff's confinement. *Id.* The fact that a plaintiff merely believes she is not free to leave is not enough to support a claim of false imprisonment. A plaintiff must make some an "attempt to determine whether his belief that his freedom of movement has been curtailed has basis." *Id.* This can be done, for instance, by making a failed request to leave.

 There is no evidence that Plaintiff was ever confined when the Defendants asked her to accompany them to a back room in the store where they explained what had happened to her photos. Even assuming that the Defendants' employee told the Plaintiff that she had to come to the back room and that a manager stood in front of the door, she was not falsely imprisoned. *Caswell Dep. 2/27/98* at 46. Plaintiff has made no allegations of threats or force used to keep her in the room. The door was wide open the entire time. *Id.* at 47. When Plaintiff wished to leave the room, she merely walked around the employee standing in front of the door and went out. At no time did any of the Defendants' employees stop the Plaintiff from leaving the room or the store. *Id.* Thus, according to the Plaintiff's own testimony, there is no evidence from which a reasonable jury could find that the Defendants' employees falsely imprisoned the Plaintiff. Thus her false imprisonment claim must be dismissed.

Furthermore, though Plaintiff does not raise any Fourth Amendment issues in her summary judgment brief, she may have raised a Fourth Amendment claim in her complaint. Plaintiff's complaint may allege that the Defendants conspired with the police to violate her right against unlawful seizure. *See Complaint ¶¶ 7, 19.* Though, because of the confused nature of the complaint, we cannot be certain that Plaintiff has actually raised a Fourth Amendment claim, we will not penalize the Plaintiff for her attorney's sloppiness. We will therefore address the

Fourth Amendment issue as if it were properly raised.

██] Any Fourth Amendment seizure claim against the defendant must be dismissed as a matter of law. A person has been seized, under the meaning of the Fourth Amendment, "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Sharrar v. Felsing*, 128 F.3d 810, 819 (3d Cir.1997)(*quoting I.N.S. v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984)(internal quotations omitted)). Given the fact that the Plaintiff got up and left the room where she was taken by the Defendants' employees, no rational jury could find that a reasonable person would not have felt free to leave. Therefore, any Fourth Amendment claims must be dismissed against the Defendants because no illegal seizure of the Plaintiff ever occurred. Any Fourth Amendment claim would also have to be dismissed because it was brought directly under the Constitution, and not through a proper statutory vehicle such as § 1983. *See Rogin*, 616 F.2d at 686–87; *DiGiovanni*, 531 F.Supp. at 144 (E.D.Pa. 1982).

## IV. CONCLUSION

Each of the Plaintiff's claims in this action is completely without merit. Plaintiff has failed to state a proper claim under federal law. Yet, had she brought her case under § 1983, her federal claims relating to the seizure of the photos would still fail because there is no evidence that the Defendants' engaged in any state action. And, had she brought her case under § 1985, her claim would fail since there is no evidence that the Defendants' discriminated against a cognizable class, or that they even conspired at all. Furthermore, Plaintiff's state claims related to the seizure of the photographs must be dismissed because the Defendants are, as a matter of law, protected by the PCPSL. Fi-

nally, Plaintiff's claims that she herself was illegally seized must be dismissed because no seizure ever took place. Indeed, each of Plaintiff's claims against the Defendants are baseless.

It is undoubtedly much easier to sit back, turn a blind eye, and ignore other people's problems, and there are those who openly advocate such a position.[3] Nevertheless, society is at its finest when people do look out for other people, even when those other people are complete strangers. The Defendants in this case, far from doing anything wrong, acted properly to report to the authorities a child who they reasonably thought was in danger of being abused. They should be commended, not sued.[4]

An appropriate order follows.

## *ORDER*

AND NOW, this 18th day of May, 1998, upon consideration of Defendants' April 6, 1998 Motion for Summary Judgment, Plaintiff's April 27, 1998 Memorandum of Law in Opposition to Motion for Summary Judgment, and Defendants' Reply Brief in Support of Motion for Summary Judgment, it is hereby ORDERED that Defendants' Motion for Summary Judgment is **GRANTED** in its entirety. Judgment in this case is entered in favor of the Defendants and against the Plaintiff. The clerk is further instructed to impound the copy of the photograph depicting the child's genitals attached as Exhibit D of the Plaintiff's Memorandum of Law.

This case is closed.

---

3. In the final episode of Seinfeld, "the New York Four," were put on trial for "criminal indifference" when they refused to help a citizen in distress. Their attorney expounded in his opening statement that in America, "You don't have to help anybody ... that's what this country is all about." With all due respect to this very funny show, we disagree.

4. Despite the utter meritlessness of the Plaintiff's case, we will not, at this time, sanction the Plaintiff for filing her suit.